## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAIRO JARA, ELIJAH MORGAN, STEVEN NICKENS, JULIE RAMROOP, JORGE RIVAS, DAVID VIGLIELMO, JENNIFER WALLACE, SUZANE APODACA, JORGE MUNOZ, ALEX HABERER, ANNETTE PEARSON, and THOMAS PEARSON, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| | Judge: |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| DeVRY EDUCATION GROUP INC., DeVRY UNIVERSITY, INC., and DeVRY/NEW YORK INC. | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Jairo Jara, Elijah Morgan, Steven Nickens, Julie Ramroop, Jose Rivas, David Viglielmo, Jennifer Wallace, Suzane Apodaca, Jorge Munoz, Alex Haberer, Annette Pearson, and Thomas Pearson ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants DeVry Education Group Inc. ("DEG"), DeVry University, Inc. ("DVU"), and DeVry/New York Inc. ("DeVry New York") (collectively "DeVry" or "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action against Defendants for falsely and misleadingly advertising the employment rates of DeVry graduates in their field. Defendants knew these representations

to be false, but continued to make them over a long period and in a wide variety of media in order to induce students to enroll at DeVry and pay tuition to Defendants.

2.      DVU is a private, for-profit, post-secondary educational institution operated by Defendants.  It has more than fifty (50) campuses throughout the United States, spread across eighteen (18) states, as well as an online presence that reaches every state in the nation.  DVU's predecessor, DeVry Institute of Technology, began offering bachelor's degrees in 1970, and DVU now comprises five colleges and a graduate school of business.

3.      Since 1975, more than 870,000 students have enrolled at DVU or its predecessor, and approximately 278,000 undergraduate students have obtained degrees from DVU or its predecessor.

4.      Defendants have repeatedly and conspicuously maintained, for well over a decade, and at least until January 2016, in their advertising that 90% of DVU graduates who were actively seeking employment obtained new jobs in their field of study within six months of graduation.  This representation is false.

5.      Defendants intended that prospective students rely on these claims when deciding to enroll at DVU.

6.      As a direct and proximate result of Defendants' false and misleading advertising claims and marketing practices, Plaintiffs and the members of the Classes, as defined herein, enrolled at DVU and obtained DVU degrees.  Plaintiffs relied on Defendants' representations that they would be highly likely to quickly obtain a new job in their chosen field of study as a result of obtaining these degrees.  In fact, none of the Plaintiffs were able to obtain a new job in their chosen field of study after graduation.

7.      Plaintiffs and each member of the Class paid tuition to DeVry.  Each Plaintiff and each member of the Class earned a degree, which as a result of Defendants' representations, was not worth the amount paid for it.  Plaintiffs and members of the Classes have suffered an ascertainable out-of-pocket loss.

8.      Plaintiffs seek relief in this action individually and on a class-wide basis for breach of the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* other state consumer protection acts, and common law.

## THE PARTIES

### Plaintiffs

### State of New Jersey

9.      Plaintiff Jairo Jara ("Jara") is a resident of Hollywood, Florida.  Plaintiff Jara took in-person courses at DVU while residing in New Jersey and graduated with a Bachelor of Science degree in Network and Communications Management in 2006.  Plaintiff Jara saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

### State of Florida

10.      Plaintiff Elijah Morgan ("Morgan") is a resident of Jacksonville, Florida.  Plaintiff Morgan took online and in-person courses at DVU while residing in Florida and graduated with a Bachelor of Arts degree in Technical Management in 2010 and a Master of Arts degree in Business Administration in 2013.  Plaintiff Morgan saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

### State of Maryland

11.     Plaintiff Steven Nickens ("Nickens") is a resident of Parkville, Maryland. Plaintiff Nickens took online and in-person courses at DVU while residing in Maryland and California and graduated with a Bachelor of Science degree in Network and Communications Management in 2009. Plaintiff Nickens saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

### State of New York

12.     Plaintiff Julie Ramroop ("Ramroop") is a resident of Brooklyn, New York. Plaintiff Ramroop took on-line courses at DVU while residing in New York and graduated with a Masters in Business degree in Administration in 2010. Plaintiff Ramroop saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

### State of California

13.     Plaintiff Jorge Rivas ("Rivas") is a resident of Highland, California. Plaintiff Rivas took in-person courses at DVU while residing in California and graduated with a Bachelor of Science degree in Telecommunications and Management in 2003. Plaintiff Rivas saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

### State of Illinois

14.     Plaintiff David Viglielmo ("Viglielmo") is a resident of Tinley Park, Illinois. Plaintiff Viglielmo took in-person courses while residing in Illinois and graduated with a Bachelor of Science degree in Technical Management in 2012. Plaintiff Viglielmo saw and

relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

15.     Plaintiff Annette Pearson ("A. Pearson") is a resident of Simi Valley, California. Plaintiff A. Pearson took in-person courses while residing in Illinois and on-line courses while residing in North Carolina and graduated with a Bachelor of Arts degree in Business Information System in 2007, a Masters' in Business degree in Administration and Project Management in 2009 and a Masters' degree in Project Management in 2011. Plaintiff A. Pearson saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

**State of Ohio**

16.     Plaintiff Jennifer Wallace ("Wallace") is a resident of Canal Winchester, Ohio. Plaintiff Wallace took in-person courses at DVU while residing in Ohio and graduated with a Bachelor of Arts degree in Business Information Systems in 2001, a Master of Business degree in Administration in 2005 and a Master of Science degree in Project Management in 2016. Plaintiff Wallace saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

**State of Washington**

17.     Plaintiff Suzane Apodaca ("Apodaca") is a resident of Bonney Lake, Washington. Plaintiff Apodaca took in-person and on-line courses while residing in Washington and graduated with a degree in Business Administration in accounting in 2012. Plaintiff Apodaca saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within her chosen field of study within six months of graduation.

18.     Plaintiff Alex Haberer ("Haberer") is a resident of Vermillion, South Dakota. Plaintiff Haberer took in-person and on-line courses while residing in Washington and graduated with a degree in Game and Simulation Programming in 2010. Plaintiff Haberer saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

## State of Arizona

19.     Plaintiff Jorge Munoz ("Munoz") is a resident of Phoenix, Arizona. Plaintiff Munoz took in-person and on-line courses while residing in Arizona and graduated with a Bachelor of Arts degree in Computer Information Systems in 2011. Plaintiff Munoz saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

## State of North Carolina

20.     Plaintiff Thomas Pearson ("T. Pearson") is a resident of Simi Valley, California. Plaintiff T. Pearson took on-line courses while residing in North Carolina and graduated with a Bachelor of Science degree in Technical Management in 2011 and a Masters' in Network & Communication Management in 2014. Plaintiff T. Pearson saw and relied upon Defendants' "90%" representation in choosing to enroll at DVU and was not able to find a job within his chosen field of study within six months of graduation.

## Defendants

21.     Defendant DeVry Education Group Inc. ("DEG") is a Delaware corporation with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois. Until November 2013, it was known as DeVry, Inc.

22.     Defendant DeVry University, Inc. ("DVU") is a Delaware corporation with its

6

principal place of business at 3005 Highland Parkway, Downers Grove, Illinois. DVU is a subsidiary of DEG.

23.     Defendant DeVry/New York, Inc. ("DeVry NY") is a Delaware corporation that also does business as DeVry College of New York. It is a subsidiary of DEG, with its principal place of business at 3005 Highland Parkway, Downers Grove, Illinois.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from any Defendant.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, as Defendants do business throughout this District, and Defendants' principal places of business are all in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

26.     New student enrollment between 2008 and 2014 ranged between 29,000 and 49,000 students per year.

27.     DEG's total gross revenue between 2008 and mid-2015 exceeded $14.5 billion, and DVU's gross revenues between 2008 and mid-2015 exceeded $8.6 billion.

28.     In each fiscal year between 2011 and 2014, DVU spent more than $135 million advertising, marketing, or promoting its educational products and services.

29.     This advertising has taken the form of television commercials, web advertisements (including on DeVry's website), in-person sales pitches by agents of Defendants,

radio spots, brochures, print advertisements, and other advertising or promotional materials. Among others, Defendants target high school students, current and former members of the military, and the unemployed.

30.     Defendants' actions have led to a suit by the Federal Trade Commission to enjoin its deceptive trade practices.  *See Federal Trade Commission v. DeVry Education Group, Inc. et al.*, Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016.

**The "90%" Representation**

31.     One of Defendants' key messages ubiquitous throughout Defendants' marketing is that obtaining a DVU degree is highly likely to result in obtaining a desirable job soon after graduation, especially in that student's chosen field of study.

32.     For many years, one of the primary methods by which Defendants' conveyed this message was a representation that 90% of DVU graduates who were actively seeking employment obtained new jobs in their field of study within six months of graduation.

33.     This "90%" representation has been claimed, at various points, by Defendants to apply for a specific year (often 2012) and at other points to all graduates since 1975.

34.     The 90% representation was not mere puffery; as described below, it was frequently stated with explanations, footnotes or definitions that contextualized it not as a general claim, but as a specific and verifiable figure, based on a specific period and specific criteria.

35.     Nor is this representation a mere unexamined carry-over from one set of marketing materials to the next.  Defendants have, at times, varied the figure slightly, using figures such as 87% or 92%, though the 90% representation remains the most common.

36. The "90%" representation is a core component of Defendants' branding, and it appears pervasively throughout Defendants' advertising and marketing across various forms of media.

37. For example, advertisements showing Defendants' "90%" representations have appeared in numerous television advertisements in both English and Spanish. These advertisements have run on national broadcast, satellite, and cable channels. Among the many examples:

(a) A widely-shown television ad in 2013 claimed, through an announcer, that "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months." At the same time, a screen appeared showing the same message in text with "90%" in, by far, the largest font. Following that text, another screen showed, "Join the 90%. Learn how at devry.edu";

(b) Television ads with substantially similar announcements and text were shown throughout the 2010-2016 period, including in 2010, 2013, and 2014; and

(c) A 2013 advertisement on devry.edu featured prominently a graphic that stated "In 2012, 90% of DeVry University GRADS actively seeking employment HAD CAREERS in their field within six months of graduation." At the end of "CAREERS" was a footnote mark which, at the end of the webpage, said, "Figure based on 2012 graduates self-reporting data to DeVry University Career Services who were employed at graduation or actively seeking employment in their field after graduation. Does not include graduates who were not actively seeking employment, as determined by DeVry University Career Services, or who did not report data on employment status to DeVry University Career Services.".

38.    Defendants have also advertised on YouTube, and have uploaded their advertisements to a YouTube channel available at https://www.youtube.com/user/TheDeVryUniversity/videos.    Several of these also contain versions of the "90%" representation, including "90% of our grads actively seeking employment had careers in 6 months" and "In 2012, 90% of DeVry University grads actively seeking employment had careers in their field in six months.  Learn how at devry.edu."

39.    Defendants have further disseminated or caused to be disseminated numerous brochures promoting DVU.  One, directed toward potential college students, was made available in virtual format on its website between 2010 and 2015, which prominently included the statement, "For over 30 years, 90% of all DeVry graduates in the active job market have been employed in their field of study within six months of graduation*."  The asterisk led to fine print at the bottom of the web page which stated, "Active job market includes those already employed prior to graduation."  Other brochures disseminated or caused to be disseminated by DeVry during this time made substantially similar representations.

40.    Similarly, Defendants have also disseminated or caused to be disseminated print advertisements that contain similar versions of the "90%" representation.  For example, during the Class Period, Defendants put forth a print advertisement that stated, "In 2012, 90% of DeVry University GRADS actively seeking employment HAD CAREERS in their field within six months of graduation*", followed by the phrase, "Join the 90%".  The asterisk led to fine print which stated "Figure based on 2012 graduated self-reporting data to DeVry University Career Services who were employed at graduation or actively seeking employment in their field after graduation.  Does not include master's degree graduates or graduates who were not actively

10

seeking employment, as determined by DeVry, or who did not report data on employment status to DeVry."

41.     Further, on Twitter, Defendants have repeatedly used the "90%" representation. For example, on July 29, 2013, Defendants, tweeted, "'90% of #DeVry grads active in the job market find employment in their field of study within 6 months.'  @DeVryUniv president Dave Pauldine."

42.     Additionally, in meetings with DVU representatives, including initial calls and interactions with self-described "Admissions Advisors," Defendants have made the 90% representation on numerous occasions.  A standard part of the initial call script from 2013 until at least early 2016 was to include the sentence, "The DeVry University difference includes outstanding career outcomes – In 2012, 90% of DeVry University grads actively seeking employment had careers in their field within six months of graduation."

43.     Admissions Advisors also routinely make or have made the "90%" representation regarding DeVry graduates, as instructed to do in DeVry training manuals.

**Defendant's Knowledge of Their False Representation**

44.     Defendants have relied upon files maintained by the DVU Career Services office to substantiate both its "90%" representation.  These files contain information about students' majors, graduation dates, employment, and DVU classification of their employment status.

45.     However, these files do not provide a reasonable basis for Defendants' "90%" representation.  Among other reasons for this, Defendants count a substantial number of DVU graduates who should be excluded from the "90%" figure.  For example, Defendants include a substantial portion of the graduates who, after graduation, continued with the same job they had at the time they enrolled at DVU.  Similarly, Defendants also routinely counted graduates who

did not obtain jobs in their chosen fields of study as part of the "90%" representation. These jobs included jobs that employers, industry experts, graduates, and consumers would not reasonably consider to be in the graduate's field of study. Examples include DVU graduates working as customer service representatives, as food service workers, and as unpaid volunteers.

46. Defendants also routinely excluded from the "90%" representation students who were actively seeking employment, including graduates who had self-classified as actively seeking employment and had been to job interviews in the preceding days or weeks before reclassification, as well as those who were applying or intending to apply for jobs while corresponding with the DVU Career Services office.

47. Upon information and belief, due to Defendants' improper methodology, the actual percentage of DVU graduates who, within six months of the time that time they graduated, could reasonably be considered to be employed "in their field" was and is markedly below 90%.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons in the United States who, within the relevant statute of limitations period, obtained a degree from DVU, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Nationwide Class").

49. Plaintiff Jara seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in New Jersey or attending a New Jersey campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "New Jersey Class").

50. Plaintiff Morgan seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Florida or attending a Florida campus, but were unable to

find employment within their chosen field of study within six months of graduation, as advertised (the "Florida Class").

51.     Plaintiff Nickens seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Maryland or attending a Maryland campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Maryland Class").

52.     Plaintiff Ramroop seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in New York or attending a New York campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "New York Class").

53.     Plaintiffs Nickens and Rivas seek to represent a Class defined as all persons who obtained a degree from DVU while residing in California or attending a California campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "California Class").

54.     Plaintiffs Viglielmo and A. Pearson seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Illinois or attending an Illinois campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Illinois Class").

55.     Plaintiff Wallace seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Ohio, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Ohio Class").

56.     Plaintiffs Apodaca and Haberer seek to represent a Class defined as all persons who obtained a degree from DVU while residing in Washington or attending a Washington

campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Washington Class").

57.     Plaintiff Munoz seeks to represent a Class defined as all persons who obtained a degree from DVU while residing in Arizona or attending an Arizona campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "Arizona Class").

58.     Plaintiffs T. Pearson and A. Pearson seek to represent a Class defined as all persons who obtained a degree from DVU while residing in North Carolina or attending a North Carolina campus, but were unable to find employment within their chosen field of study within six months of graduation, as advertised (the "North Carolina Class").

59.     The Nationwide Class, the New Jersey Class, the Florida Class, the Maryland Class, the New York Class, the California Class, the Illinois Class, the Ohio Class, the Washington Class, the Arizona Class, and the North Carolina Class are sometimes referred to as the "Class."  The New Jersey Class, the Florida Class, the Maryland Class, the New York Class, the California Class, the Illinois Class, the Ohio Class, the Washington Class, the Arizona Class, and the North Carolina Class are referred to collectively as the "State Classes."

60.     Excluded from the Class are Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61.     The Class is so numerous that joinder of all members is impractical.  Although Plaintiffs do not yet know the exact size of the Classes, the DeVry graduates graduated from

14

DeVry programs throughout the United States, live throughout the United States, and on information and belief, members of the Class number in the hundreds of thousands.

62.     The Class is ascertainable because their members can be identified by objective criteria and through Defendants' own records.   Individual notice can be provided to Class members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

63.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to whether the labeling and marketing of the benefits of a DeVry degree were false and misleading.

64.     Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct.  Plaintiffs have no interests antagonistic to the interests of the other members of the Classes.  Plaintiffs and all members of the Classes have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

65.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained counsel that is competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.   The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

66.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system

presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## CONCEALMENT OF UNLAWFUL CONDUCT AND EQUITABLE TOLLING

67.     Plaintiffs disclaim any burden to plead facts regarding the statute of limitations. By its very nature, as alleged herein, Defendants' unlawful activity was self-concealing. By Defendants' affirmative acts, misrepresentations, and nondisclosures, any applicable statute of limitations on claims asserted by Plaintiffs and members of the Class have been and are tolled.

68.     Further, Defendants routinely updated their false and misleading representations, sometimes adjusting them one way or another slightly so as to make it appear that their representation was, in fact, valid. These actions continued the conduct complained of until sometime following the filing of the lawsuit by the FTC discussed *supra*.

69.     Plaintiffs and members of the Class had no knowledge of the unlawful conduct alleged in this Complaint, or of any facts that could or would have led to the discovery thereof, until at least January 2016. In the exercise of reasonable diligence, Plaintiffs could not have discovered Defendants' violations of law such that suit could be brought before January 2016.

## FIRST CLAIM FOR RELIEF
### (Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)
### (By All Plaintiffs on Behalf of the Nationwide Class)

70.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein. Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class.

71.     This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"). The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." 815 ILCS 505/1.

72.     Plaintiffs and Nationwide Class members are "consumers" within the meaning of 815 ILCS 505/1(e) or otherwise sufficiently implicate consumer protection concerns under the ICFA.

73.     Defendants were engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

74.     815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact . . . in the conduct of any trade or commerce."

75.     815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act." Defendants' unfair and deceptive practices are likely to mislead – and

have mislead – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. § 352.

76. Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

77. Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

78. Plaintiffs and the Nationwide Class have been aggrieved by Defendants' unfair and deceptive practices in that they purchased Defendants' educational services, which they would not have purchased or would not have paid as much for had they known the true facts.

79. The damages suffered by Plaintiffs and the Nationwide Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

80. Plaintiffs' actions were akin to consumer actions insofar as Plaintiffs saw Defendants' advertisements and accepted Defendants' "90%" representation as it influenced their decisions to attend DVU.

81. Defendants' "90%" representation involved consumer protection concerns because Defendants made the "90%" representation specifically for the purposes of inducing enrollment and/or appearing to be a more desirable educational institution. Further, Defendants' "90%" representation was specifically used for marketing purposes and to increase their profits.

82. Plaintiffs' requested relief would serve the public interest by protecting Class members and future prospective students from Defendants' conduct, by enjoining Defendants

from their deceptive marketing practice, and by discouraging other for-profit educational institutions from making false and misleading representations regarding the acquisition of jobs for their graduates.

83.     Pursuant to 815 ILCS 505/10a, Plaintiffs and the Nationwide Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

84.     Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs and the Nationwide Class make claims for economic damages, punitive damages, and attorneys' fees and costs.

85.     As required by 815 ILCS 505/10a(d), notice of this action will be mailed to the Illinois Attorney General upon filing.

**SECOND CLAIM FOR RELIEF**
**(Violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.*)**
**(By Plaintiff Jara On Behalf of the New Jersey Class)**

86.     Plaintiff Jara on behalf of himself and the New Jersey Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

87.     Chapter 8, Section 56 of the New Jersey Statutes comprises the New Jersey Consumer Fraud Act (the "NJCFA"), which generally governs unlawful business practices and the sale or advertisement of merchandise within the State of New Jersey. N.J. Stat. § 56:8.

88.     Under the NJCFA, "merchandise" means "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly, to the public for sale." N.J. Stat. § 56:8-1(c).

89.     The NJCFA outlaws the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact

with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. § 56:8-2.

90.     In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation. Through this misrepresentation, Defendants deprived Plaintiff Jara and New Jersey Class members of material facts regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

91.     Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

92.     Defendants knew or should have known that the "90%" representation was false and misleading.

93.     Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiff Jara and the New Jersey Class.

94.     Plaintiff Jara and members of the New Jersey Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff

20

Jara and members of the New Jersey Class would not have enrolled at DVU or would have paid less for DVU's services.

95.     As a direct and proximate result of Defendants' violations of the NJCFA, Plaintiff Jara and the New Jersey Class have suffered an ascertainable loss.

96.     Defendants are liable to Plaintiff Jara and the New Jersey Class for damages in amounts to be proven at trial, including attorneys' fees and costs, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under N.J. Stat. § 56:8-2.11-2.12 and N.J. Stat. § 4:32-2(h).

**THIRD CLAIM FOR RELIEF**
**(Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201, *et seq*.)**
**(By Plaintiff Morgan On Behalf of the Florida Class)**

97.     Plaintiff Morgan on behalf of himself and the Florida Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

98.     Chapter 501 of the Florida Annotated Statutes generally governs consumer protection within the State of Florida (the "FDUTPA").  Fla. Stat. § 501.201, *et seq*.

99.     Under the FDUTPA, "trade or commerce" means "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  Fla. Stat. § 501.203(8).

100.     Under the FDUTPA, "thing of value" includes, without limitation "any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning."  Fla. Stat. § 501.203(9).

101.    The FDUTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

102.    Defendants' educational services are "services" or "things of value" within the meaning of the FDUTPA.

103.    Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiff Morgan and the Florida Class.

104.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiff Morgan and members of the Florida Class about the true value of a DVU degree.

105.    Defendants knew or should have known that the "90%" representation was false and misleading.

106.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

107.    Plaintiff Morgan and Florida Class members' loss was caused by Defendants' willful misrepresentation regardig their job acquisition statistics.

108.    Plaintiff Morgan and members of the Florida Class suffered actual damages caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Morgan and members of the Florida Class would not have enrolled at DVU.

109.     As a direct and proximate result of Defendants' violations of the FUDTPA, Plaintiff Morgan and the Florida Class have suffered actual damages.

**FOURTH CLAIM FOR RELIEF**
**(Violation of the Maryland Consumer Protection Act,**
**Md. Commercial Law Code Ann. § 13-101, *et seq*.)**
**(By Plaintiff Nickens On Behalf of the Maryland Class)**

110.     Plaintiff Nickens on behalf of himself and the Maryland Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

111.     Chapter 13-101 *et seq.* of the Maryland Consumer Protection Act ("MCPA") generally governs deceptive trade practices within the State of Maryland.

112.     The CCPA governs trade practices affecting the sale of consumer goods and consumer services.  Md. Commercial Law Code Ann. § 13-101.

113.     The CCPA outlaws "[f]alse, falsely disparaging, or misleading oral or written statement[s], visual description, or other representation[s] of any kind which ha[ve] the capacity, tendency, or effect of deceiving or misleading consumers."  Md. Commercial Law Code Ann. § 13-301.

114.     The CCPA also outlaws "any unfair or deceptive trade practice" in "[t]he offer for sale of course credit or other educational services."  Md. Commercial Law Code Ann. § 13-303.

115.     Plaintiff Nickens is a consumer within the meaning of the MCPA.

116.     Defendants' educational services are "consumer services" and "educational services" within the meaning of the CCPA.

117.     In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deprived Plaintiff Nickens and Maryland Class members of material facts regarding the value of a degree from DVU.

23

Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

118.    Further, Defendants failed to disclose that their advertisements were based upon knowingly false figures which were shown in their advertisements with an intent to induce consumers to enroll at DVU.

119.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.  Defendants were and are engaged in the sale of educational services on a for-profit basis within the State of Maryland.

120.    By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the MCPA.

121.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, willfully concealed or actively intended to mislead consumers, tended to create a false impression in potential and actual consumers of educational services, and in fact did deceive reasonable consumers, including Plaintiff Nickens and members of the Maryland Class about the true value of a DVU degree.

122.    Defendants knew or should have known that the "90%" representation was false and misleading.

123.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

124.    Plaintiff Nickens and members of the Maryland Class suffered an identifiable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Nickens and members of the Maryland Class would not have enrolled at DVU or would have paid less for Defendants' services.

125.    Defendants' unlawful acts and practices complained of herein affect the public interest.

126.    As a direct and proximate result of Defendants' violations of the MCPA, Plaintiff Nickens and the Maryland Class have suffered injury-in-fact and/or actual damage.

127.    Defendants are liable to Plaintiff Nickens and the Maryland Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Md. Commercial Law Code Ann. § 13-408.

**FIFTH CLAIM FOR RELIEF**
**(Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349)**
**(By Plaintiff Ramroop on Behalf of the New York Class)**

128.    Plaintiffs Ramroop on behalf of herself and the New York Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

129.    Plaintiff Ramroop brings this claim on behalf of the New York Class.

130.    Plaintiff Ramroop and the New York Class are "persons," as defined by the New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

131.    Defendants are a "person[s]," "firm[s]," "corporation[s]," or "association[s]," as defined by the New York GBL, N.Y. Gen. Bus. Law § 349.

132.    The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct directed toward consumers, as described herein, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

133.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

134.    In the course of its business, Defendant intentionally misrepresented the job acquisition rates of DVU graduates within six months of graduation, and otherwise engaged in activities with a tendency or capacity to deceive.

135.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of educational services.

136.    By failing to disclose and actively concealing the actual job acquisition numbers of its graduates within six months of graduation, Defendants engaged in unfair or deceptive business practices in violation of the New York GBL. Defendants deliberately misrepresented the information about their job acquisition rates within six months of graduation in order to induce students to purchase educational services by enrolling at DeVry.

137.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the actual job acquisition figures of DVU graduates within six months of

graduation. Defendants compounded the deception by repeatedly the "90%" representation long after they knew or should have known that their representations were false.

138. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Ramroop, about the true nature and value of their educational services.

139. Defendants intentionally and knowingly misrepresented material facts regarding their educational services with an intent to mislead Plaintiff Ramroop and the New York Class.

140. Defendants knew or should have known that their conduct violated the New York GBL.

141. Defendants owed Plaintiff Ramroop and the New York Class a duty to disclose the true job acquisition rates within six months of graduation because Defendants:

a) Possessed exclusive knowledge of actual job acquisition rates;

b) Intentionally concealed the actual job acquisition rates from Plaintiff Ramroop and the Class; and

c) Made incomplete representations about their job acquisition rates, while purposefully withholding material facts from Plaintiff Ramroop and the Class that contradicted these representations.

142. Because Defendants fraudulently concealed the fact that the "90%" representation was false, the value of Defendants' educational services was greatly diminished. In light of the Defendants' conduct, a DVU degree is now worth significantly less than it otherwise would be.

Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiff Ramroop and the New York Class. Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

143.    Plaintiff Ramroop and the New York Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of that the "90%" representation was false and misleading, Plaintiff Ramroop would not have enrolled at DVU or would have paid less for Defendants' services.

144.    Defendants' violations present a continuing risk to Plaintiff as well as to current and prospective students. Defendants' unlawful acts and practices complained of herein affect the public interest.

145.    As a direct and proximate result of Defendants' violations of the New York GBL, Plaintiff Ramroop and the New York Class have suffered injury-in-fact and/or actual damage.

146.    Plaintiff Ramroop and the New York Class seek punitive damages against Defendants because Defendants' conduct was egregious. Defendants directed their "90%" representation toward high school students, including minors, toward current and former service members, and toward the unemployed with the knowledge that this representation was false and would be relied on by those individuals seeking employment during a time of financial crisis and high unemployment rates. Defendants' egregious conduct warrants punitive damages.

147.    Because Defendants' willful and knowing conduct caused injury to the New York Class, the New York Class seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages, if available, up to $1,000, punitive damages, reasonable attorneys'

fees and costs, an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## SIXTH CLAIM FOR RELIEF
### (Violation of the New York General Business Law, N.Y. Gen. Bus. Law § 350)
### (By Plaintiff Ramroop on Behalf of the New York Class)

148.    Plaintiff Ramroop on behalf of herself and the New York Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

149.    Plaintiff Ramroop brings this claim on behalf of the New York Class.

150.    Defendants were and are engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

151.    N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

152.    Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or by which the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and the New York Class.

153.    Defendant has violated New York GBL § 350 because Defendants' "90%" misrepresentation was material and likely to deceive a reasonable consumer.

154.    Members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendants' false advertising.  In purchasing Defendants' educational services, New York Plaintiff Ramroop and the New York Class relied on the misrepresentations and/or omissions of Defendants with respect to their ability to find a job in their chosen field within six months of graduation.  Defendants' representations were false and/or misleading because they materially misrepresented Defendants' own internal statistics

regarding job acquisition and/or placement within six months of graduation. Had Plaintiff Ramroop and the New York Class known this, they would not have purchased Defendants' educational services.

155. Pursuant to N.Y. Gen. Bus. Law § 350-e, the New York Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for every New York Class member. Because Defendants' conduct was committed willfully and knowingly, each New York Subclass member is entitled to recover three times actual damages, up to $10,000.

156. The New York Class also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under New York Gen. Bus. Law § 350.

**SEVENTH CLAIM FOR RELIEF**
**(California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*)**
**(By Plaintiffs Rivas and Nickens on Behalf of the California Class)**

157. Plaintiffs Rivas and Nickens on behalf of themselves and the California Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

158. The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

159. In the course of conducting its business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Cal. Civil Code §§ 1750, *et seq.*, and the common law.

160.     Plaintiffs Rivas and Nickens, individually and on behalf of other California Class members, reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

161.     Defendants' actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in deceptive and false advertising, and misrepresented and omitted material facts regarding its educational services, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and/or unscrupulous activities that are substantially injurious to consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq*.

162.     The California Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

163.     Defendants' actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq.*

164.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

165.     As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiffs Rivas and Nickens and other members of the California Class have in fact been harmed as described above.   If Defendants had not misrepresented their educational services as being more likely than they were to lead to a job in Plaintiffs Rivas and Nickens' and Class Members' chosen field, Plaintiffs

Rivas and Nickens would not have purchased Defendants' educational services or would not have paid as much for them as they did.

166.    As a result of Defendants' unlawful, unfair, and fraudulent practices, Plaintiffs Rivas and Nickens and the other California Class members have suffered injury in fact and lost money.

167.    As a result of their deception, Defendants have been able to reap unjust revenue and profit in violation of the UCL.

168.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate for Plaintiffs Rivas and Nickens and the California Class.

169.    As a result of Defendants' conduct in violation of the UCL, Plaintiffs Rivas and Nickens and members of the California Class have been injured as alleged herein in amounts to be proven at trial because they purchased the educational services without full disclosure of the material facts discussed above.

170.    As a result, Plaintiffs Rivas and Nickens individually, and on behalf of the California Class, and the general public, seek restitution and disgorgement of all money obtained from Plaintiffs Rivas and Nickens and the members of the California Class collected by Defendant as a result of unlawful, unfair, and/or fraudulent conduct, and seeks injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## EIGHTH CLAIM FOR RELIEF
### (California Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*)
### (By Plaintiffs Rivas and Nickens on Behalf of the California Class)

171.    Plaintiffs Rivas and Nickens on behalf of themselves and the California Class, repeat and reassert each of the allegations contained above as if fully set forth herein.

172.    This cause of action is brought pursuant to the California Consumer Legal Remedies Act (the "CLRA"). Plaintiffs Rivas and Nickens are consumers as defined by California Civil Code § 1761(d). The affected products are goods within the meaning of the CLRA.

173.    Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs Rivas and Nickens and the California Class which were intended to result in, and did result in, the sale of the educational services in question:

a)    Representing that. . .the services have . . . characteristics, . . . uses [or] benefits . . . which they do not have;

b)    Representing that. . .the services are of a particular standard, quality, or grade  . . . if they are of another; and

c)    Advertising services . . . with intent not to sell them as advertised.

174.    Defendants violated the CLRA by marketing and advertising the educational services in question in the manner described herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

175.    Defendants were in a position to know, both from their own knowledge that the "90%" representation was false and misleading.

176.    Defendants intended that Plaintiffs Rivas and Nickens and members of the California Class would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the services.

177.    California Civil Code §1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate California Civil Code § 1770.

178.    On October 28, 2016, Plaintiffs Rivas and Nickens sent to Defendants a letter demanding that Defendant rectify the problems listed herein.  If Defendants have failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers with thirty (30) of the written notice pursuant to section 1782 of the CLRA, then Plaintiffs Rivas and Nickens will further seek to recover actual or statutory compensatory/monetary damages as authorized by California Civil Code section 1780(a)(1), restitution as applicable and authorized under California Civil Code section 1780(a)(3), and punitive damages as authorized by California Civil Code section 1780(a)(4), which are appropriate in this case in light of Defendant's knowing, intentional, fraudulent and unconscionable conduct, Defendants' reckless disregard of its legal obligations to Plaintiffs Rivas and Nickens and the members of California Class, and/or as otherwise recoverable under California Civil Code section 1780(a)(4).  A copy of the letter is attached hereto as Exhibit A.

### NINTH CLAIM FOR RELIEF
**(Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)**
**(In the Alternative, By Plaintiffs Viglielmo and**
**A. Pearson on Behalf of the Illinois Class)**

179.    Plaintiffs Viglielmo and A. Pearson repeat the allegations contained in the paragraphs above as if fully set forth herein.  Plaintiffs Viglielmo and A. Pearson bring this Count individually and on behalf of the members of the Illinois Class.

180.   This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").  The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 815 ILCS 505/1.

181.   Plaintiffs Viglielmo and A. Pearson and Illinois Class members are "consumers" within the meaning of 815 ILCS 505/1(e) or otherwise sufficiently implicate consumer protection concerns under the ICFA

182.   Defendants were engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

183.   815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact . . . in the conduct of any trade or commerce."

184.   815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and have mislead – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2 and 21 U.S.C. § 352.

185.   Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

186.    Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

187.    Plaintiffs Viglielmo and A. Pearson and the Illinois Class have been aggrieved by Defendants' unfair and deceptive practices in that they purchased Defendants' educational services, which they would not have purchased or would not have paid as much for had they known the true facts.

188.    The damages suffered by Plaintiffs Viglielmo and A. Pearson and the Illinois Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

189.    Plaintiffs Viglielmo and A. Pearson's actions were akin to consumer actions insofar as Plaintiffs Viglielmo and A. Pearson saw Defendants' advertisements and accepted Defendants' "90%" representation as it influenced their decisions to attend DVU.

190.    Defendants' "90%" representation involved consumer protection concerns because Defendants made the "90%" representation specifically for the purposes of inducing enrollment and/or appearing to be a more desirable educational institution.  Further, Defendants' "90%" representation was specifically used for marketing purposes and to increase their enrollment and profits.

191.    Plaintiff Viglielmo and A. Pearson's requested relief would serve the public interest by protecting Class members and future prospective students from Defendants' conduct by enjoining Defendants from their deceptive marketing practices and by discouraging other for-profit educational institutions from making false and misleading representations regarding the acquisition of jobs for their graduates.

192.    Pursuant to 815 ILCS 505/10a, Plaintiffs Viglielmo and A. Pearson and the Illinois Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

193.    Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs Viglielmo and A. Pearson and the Illinois Class make claims for economic damages, punitive damages, and attorneys' fees and costs.

194.    As required by 815 ILCS 505/10a(d), notice of this action will be mailed to the Illinois Attorney General upon filing.

**TENTH CLAIM FOR RELIEF**
**(Violation of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01, *et seq*.)**
**(By Plaintiff Wallace On Behalf of the Ohio Class)**

195.    Plaintiffs Wallace on behalf of herself and the Ohio Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

196.    Chapter 1345 of the Ohio Revised Code generally governs unlawful sales practices within the State of Ohio (the "OCSPA").  O.R.C. § 1345.01, *et seq.*

197.    Under the OSCPA, a "consumer transaction" means "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things . . . ."  O.R.C. § 1345.01(A).

198.    The OSCPA outlaws "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction."  O.R.C. § 1345.02(A).

199.    Further, acts or practices that can be unfair or deceptive include consumer transactions which have "sponsorship[s], approval, performance characteristics, accessories,

uses, or benefits that [they] do[] not have," or that they are of a "particular standard, quality, grade, style, prescription, or model, if [they are] not." O.R.C. § 1345.02(B)

200.   In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.   Through this misrepresentation, Defendants deceived Plaintiffs Wallace and Holiness and the Ohio Class members with respect to material facts regarding the value of a degree from DVU.   Further, Defendants have engaged in trade practices with a tendency or capacity to deceive.   Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

201.   Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiff Wallace and the Ohio Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

202.   By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the OCSPA.

203.   Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiff Wallace and the members of the Ohio Class about the true value of a DVU degree.

204.    Defendants knew that the "90%" representation was false and misleading.

205.    Plaintiff Wallace and the members of the Ohio Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiff Wallace and the members of the Ohio Class would not have enrolled at DVU or would have paid less for Defendants' services.

206.    As a direct and proximate result of Defendants' violations of the OCSPA, Plaintiff Wallace and the Ohio Class have suffered injury-in-fact and/or actual damage.

207.    Defendants' acts are sufficiently similar to other actions by which courts have maintained actions under the OCSPA, as required by O.R.C. § 1345.09(B), for maintenance of this claim for relief as a class action.

208.    Defendants are liable to Plaintiff Wallace and the Ohio Class for actual damages in amounts to be proven at trial, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under O.R.C. § 1345.09.

## ELEVENTH CLAIM FOR RELIEF
### (Violation of the Washington Unfair Business Practices Act, Rev. Code Wash. § 19.86.010, *et seq.*)
### (By Plaintiff Apodaca and Haberer On Behalf of the Washington Class)

209.    Plaintiffs Apodaca and Haberer on behalf of themselves and the Washington Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

210.    Chapter 19.86 of the Washington Revised Code generally governs unlawful trade practices within the State of Washington (the "WUBPA"). Rev. Code Wash. § 19.86.010, *et seq.*

211.    Under the WUBPA, "trade" and "commerce" mean "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." Rev. Code Wash. § 19.86.010(2).

212.    The WUBPA outlaws "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Rev. Code Wash. § 19.86.020.

213.    In the course of business, Defendants actively misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation.  Through this misrepresentation, Defendants deceived Plaintiffs Apodaca and Haberer and the Washington Class members with respect to material facts regarding the value of a degree from DVU.  Further, Defendants have engaged in trade practices with a tendency or capacity to deceive.  Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of material facts with intent that others rely upon such concealment or misstatement in connection with the sale of its educational services.

214.    Further, Defendants, in the course of advertising and selling educational services, Defendants took advantage of Plaintiffs Apodaca and Haberer and the Washington Class members' lack of knowledge and/or understanding of Defendants' actual employment figures.

215.    By failing to disclose the actual percentage of DVU graduates employed in their chosen field within six months of graduation and by marketing DVU degrees as highly likely to lead to obtaining a job within six months of graduation, Defendants have engaged in unfair or deceptive business practices in violation of the WUBPA.

216.    Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiffs Apodaca and Haberer and members of the Washington Class about the true value of a DVU degree.

40

217. Defendants knew or should have known that the "90%" representation was false and misleading.

218. Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiffs Apodaca and Haberer and the Washington Class. Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

219. Plaintiffs Apodaca and Haberer and members of the Washington Class suffered an ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiffs Apodaca and Haberer and members of the Washington Class would not have enrolled at DVU or would have paid less for Defendants' educational services.

220. Defendants' unlawful acts and practices complained of herein affect the public interest as defined in Rev. Code Wash. § 19.86.093

221. As a direct and proximate result of Defendants' violations of the WUBPA, Plaintiffs Apodaca and Haberer and the Washington Class have suffered injury-in-fact and/or actual damage.

222. Defendants are liable to Plaintiffs Apodaca and Haberer and the Washington Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under § 19.86.090.

223. Pursuant to § 19.86.095, notice of this complaint will be mailed upon filing to the Washington Attorney General.

**TWELFTH CLAIM FOR RELIEF**
**(Arizona Consumer Fraud Act, Ariz. Revised Stat. §§ 44-1521 *et. seq.*)**
**(By Plaintiff Munoz On Behalf of the Arizona Class)**

224.    Plaintiff Munoz on behalf of himself and the Arizona Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

225.    Plaintiff Munoz brings this claim individually and on behalf of the Arizona Class.

226.    Pursuant to Section 44-1522, Ariz. Rev. Stat., it is unlawful to engage in false, misleading or deceptive acts or practices in connection with the sale or advertisement of any merchandise.

227.    Section 44-1521 defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services . . . ."

228.    Plaintiff Munoz is a consumer within the meaning of the Act.

229.    Defendant's educational services are merchandise as defined within the scope of the Act.

230.    Defendant has engaged in deceptive or unfair acts or practices in violation of the ACFA by engaging in the acts and practices above, specifically the "90%" representation.

231.    These practices constitute fraud, false pretense, false promise, and/or misrepresentation on the part of Defendant.

232.    Plaintiff Munoz relied on Defendant's deceptive representations in their purchases of Defendant's educational services, including the belief that 90% of all DeVry graduates found jobs within their chosen field of study within six months of graduation.

233.    Plaintiff Munoz and members of the Arizona Class are entitled to damages including full restitution and/or disgorgement of all revenues, earnings, profits, compensation,

and benefits that may have been obtained by Defendant as a result of such business acts or practices.

### THIRTEENTH CLAIM FOR RELIEF
**(Violation of the North Carolina Consumer Protection Act, N.C. Gen. Stat. § 75-1, *et seq*.)**
**(By Plaintiffs A. Pearson and T. Pearson On Behalf of the North Carolina Class)**

234.    Plaintiffs A. Pearson and T. Pearson on behalf of themselves and the North Carolina Class, repeats and reasserts each of the allegations contained above as if fully set forth herein.

235.    Chapter 75, Article 1 of the North Carolina General Statutes generally governs consumer protection within the State of North Carolina (the "NCCPA"). N.C. Gen. Stat. § 75-1, *et seq*.

236.    Under the NCCPA, "commerce" "includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b).

237.    The NCCPA outlaws "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(b).

238.    In the course of business, Defendants willfully misrepresented the actual likelihood of being able to find a job in their graduates' chosen field within six months of graduation. Through this misrepresentation, Defendants deceived Plaintiffs A. Pearson and T. Pearson and the North Carolina Class members with respect to material facts regarding the value of a degree from DVU. Further, Defendants have engaged in trade practices with a tendency or capacity to deceive. Moreover, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices and/or concealment, suppression or omission of material facts with intent that others rely to their

detriment upon such concealment or misstatement in connection with the sale of its educational services.

239.     Defendants' failure to disclose and active concealment of the benefits of their educational services was material to Plaintiffs A. Pearson and T. Pearson and the North Carolina Class.  Defendants' misrepresentation regarding their actual job acquisition rates for students within six months of graduation made their degrees less valuable than if the "90%" representation had been accurate.

240.     Defendants' unfair or deceptive acts or practices, including the "90%" representation, had a tendency or capacity to mislead, tended to create a false impression in potential and actual consumers of educational services, and were likely to and in fact did deceive reasonable consumers, including Plaintiffs A. Pearson and T. Pearson and members of the North Carolina Class about the true value of a DVU degree.

241.     Defendants knew or should have known that the "90%" representation was false and misleading.

242.     Defendants' conduct was willful.

243.     Defendants' conduct substantially affected trade or commerce within the State of North Carolina.

244.     Plaintiffs A. Pearson and T. Pearson and members of the North Carolina Class suffered an actual, ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the actual job acquisition numbers for degrees conferred by DVU, Plaintiffs A. Pearson and T. Pearson and members of the North Carolina Class would not have enrolled at DVU or would have paid less for Defendants' educational services.

245.    Defendants' unlawful acts and practices complained of herein affect the public interest.

246.    As a direct and proximate result of Defendants' violations of the NCCPA, Plaintiffs A. Pearson and T. Pearson and the North Carolina Class have suffered injury-in-fact and/or actual damage.

247.    Defendants are liable to Plaintiffs A. Pearson and T. Pearson and the North Carolina Class for damages in amounts to be proven at trial, including treble damages, and, circumstances permitting, attorneys' fees, as well as injunctive and appropriate ancillary relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under N.C. Gen. Stat. §§ 75-16 and 75-16.1.

**FOURTEENTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

248.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

249.    Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class.

250.    Plaintiffs and members of the Nationwide Class conferred benefits on Defendants by purchasing educational services.

251.    Defendants have been unjustly enriched in retaining revenues derived from Plaintiffs and Nationwide Class members' purchases of the educational services.  Retention of that revenue under these circumstances is unjust and inequitable because Defendants misrepresented facts concerning the characteristics, qualities, and value of the educational services and caused Plaintiffs and Nationwide Class members to purchase the educational

services and to pay more for the educational services, which they would not have done had the true facts been known.

252.     Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Nationwide Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A.     Determining that this action is a proper class action;

B.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.     Awarding compensatory and punitive damages in favor of Plaintiffs, members of the Nationwide Class and the State Classes against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.     Awarding injunctive relief against Defendants to prevent Defendants from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.     For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.     Awarding Plaintiffs and members of the Nationwide Class and State Classes their reasonable costs and expenses incurred in this action, including attorney's fees; and

G.     Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable in this action.

Dated: October 28, 2016

Respectfully submitted:

By: */s/ Theodore B. Bell*
Theodore B. Bell
Carl Malmstrom
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
70 W. Madison St., Suite 1400
Tel: (312) 984-0000
Fax: (312) 214-3110
tbell@whafh.com
malmstrom@whafh.com

Thomas H. Burt
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
burt@whafh.com

Thomas J. McKenna
Gregory M. Egleston
**GAINEY MCKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
egleston@gme-law.com
tjmckenna@gme-law.com

*Counsel for Plaintiffs and the Putative Class*

whafhch54792

47